UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ASHLEY BORZENSKI : | CIVIL ACTION NO.: |
|     Plaintiff, : | |
| : | |
| v. : | |
| : | |
| CONNECTICUT GATEWAY, INC. d/b/a : | |
| WESTBROOK HONDA, AMERICAN : | TRIAL BY JURY DEMANDED |
| HONDA MOTOR COMPANY INC., and : | |
| AMERICAN HONDA FINANCE : | |
| CORPORATION d/b/a HONDA FINANCIAL : | OCTOBER 3, 2017 |
| SERVICES : | |
|     Defendants : | |

## COMPLAINT

### I. INTRODUCTION

1. This is an action brought by a consumer under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq.,* and for breaches of express warranty and the implied warranty of merchantability under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, against Connecticut Gateway, Inc. d/b/a Westbrook Honda ("Westbrook Honda"), a car dealership that fraudulently and maliciously sold her a 2012 Honda Civic (the "Vehicle") under the description of "Certified Pre-Owned" ("CPO"), even though the Vehicle had previously been in one or more accidents or similar events that caused structural damage and that had not been properly repaired and restored, resulting in a condition that rendered the Vehicle unmerchantable and ineligible for inclusion in Honda's CPO program.  Plaintiff also asserts pendent state law claims against the dealership and against American Honda Motor Co. Inc. for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110 *et seq.*

## II. PARTIES

2. Plaintiff, Ashley Borzenski ("Borzenski" or "Plaintiff"), is a natural person residing in East Haven, Connecticut.

3. Westbrook Honda is a Connecticut corporation that operates a motor vehicle dealership in Westbrook, Connecticut.

4. American Honda Motor Co. Inc. ("Honda") is a California corporation with a principal place of business in California, that is the distributor and promoter for the sale of motor vehicles manufactured by Honda Motor Company, Ltd, a Japanese corporation.

5. American Honda Finance Corporation d/b/a Honda Financial Services ("Honda Financial") is a California corporation with its principal office in Torrance, California, that accepts the assignment of retail installment contracts from registered Honda car dealerships such as Westbrook Honda.

## III. JURISDICTION

6. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1691e, 15 U.S.C. § 2310(d)(1)(B) and Fed. R. Civ. P. 18(a). Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

7. This Court has jurisdiction over Westbrook Honda because it is organized under the laws of the state of Connecticut and regularly conducts business in this state. This Court has jurisdiction over Honda and Honda Financial because they regularly conduct business in this state.

8. Venue in this Court is proper, because Plaintiff resides in Connecticut and the transaction occurred in this state.

## IV.  FACTUAL ALLEGATIONS

9. Honda and its dealerships, including Westbrook Honda, promote Honda's CPO program as a means of marketing pre-owned vehicles.

10. Vehicles included in the CPO program are represented by Westbrook Honda and the participating dealership as having been subjected to a comprehensive 182+ point inspection to ensure that they meet the program's stringent certification criteria.

11. Honda promotes its CPO program on its website and through various media.

12. On or about June 30, 2016, Borzenski went to Westbrook Honda to inquire about a new Honda Accord that she had seen advertised for sale on the Internet by Westbrook Honda.

13. Borzenski met with Westbrook Honda employees Tye Zimerle ("Zimerle") and Pat Esposito ("Esposito"), the used car manager.

14. Borzenski told Zimerle and Esposito that she wanted to purchase the new Honda Accord.

15. Zimerle and Esposito both told Borzenski that she could not get approved for financing to purchase the new Honda Accord because she was only nineteen years old, and they refused to permit her to apply for credit to buy that vehicle.

16. Instead, Zimerle and Esposito steered Borzenski to a used 2012 Honda Civic (the "Vehicle" or "Civic").

17. Zimerle and Esposito told Borzenski that the Vehicle was certified under Honda's CPO program.

3

18. Borzenski was familiar with CPO programs generally, and she believed that CPO vehicles were "like new" because the car was inspected to ensure that it was in good condition.

19. In reliance upon the representations by Honda and by Westbrook Honda regarding the CPO program, and based on Westbrook Honda's representations to Borzenski that she could not be approved to finance the purchase of a new Accord due to her age, Borzenski agreed to purchase the Vehicle.

20. Unbeknownst to Plaintiff, the Vehicle had previously been in a significant accident or similar incident and suffered structural damage and, as a result of this damage, was not safe to drive.

21. Absent the prior accident and structural damage, the Vehicle would have had a fair retail value of approximately $13,700 but, because of its condition and history, it had a fair retail value of approximately $10,000.00.

22. On information and belief, Westbrook Honda knew of the Vehicle's history and structural damage, because the damage would have been apparent to any automotive professional, would have been discovered during the extensive 182+ point inspection required to certified a vehicle under Honda's CPO program, and would have been apparent to a dealership performing the mandatory Connecticut safety inspection.

23. Westbrook Honda "targeted" Plaintiff, who is a young, teenaged woman, to purchase this Vehicle because she was perceived to be a vulnerable consumer, in part, because of her age.

24. Zimerle and Esposito told Plaintiff that she could not be approved for a new Honda Accord due to her age and they only showed her the Civic, thereby

preventing her and discouraging her from applying for credit to purchase a new Honda or any of the other vehicles in Westbrook Honda's inventory.

25. Plaintiff agreed to purchase the Vehicle unaware of the structural damage.

26. Westbrook Honda set a cash price of $14,240.00 for the Vehicle and provided her with a $11,500 allowance for her trade-in of a 2012 Honda Accord.

27. Westbrook Honda prepared a Retail Installment Contract (the "Contract") that listed a cash price of $14,240.00, a cash deposit of $1,500 and a net trade-in allowance of -$3,859.94, and provided for 66 monthly payments of $407.34 commencing August 14, 2016.

28. The Contract also included a charge of $2,195 for a service contract that Plaintiff neither requested nor desired and which she did not realize had been included.

29. The service contract was of little or no value.

30. Borzenski financed the balance of $20,275.08 pursuant to the Contract that was assigned to Honda Financial.

31. Westbrook Honda provided Plaintiff with a copy of a Honda CPO 182 Point Inspection Checklist that indicated "pass" marks for all of the checklist items.

32. Plaintiff accepted delivery of the Vehicle unaware of its defects.

33. In or about July, 2017, Plaintiff wanted to purchase another vehicle and she went to a Jeep dealership to see about trading in the Civic. The dealership told Plaintiff that the Vehicle had been in multiple accidents and had structural damage.

34. Plaintiff went to Westbrook Honda and met with General Manager Bill Mackey and Pat Esposito and she asked that Westbrook Honda give her another vehicle or refund the purchase price, but they refused to do so.

35. On or about August 14, 2017, Plaintiff had the Vehicle inspected by an independent auto body expert to obtain an assessment of the extent of any prior damage.

36. The independent expert determined that the Vehicle had been involved in an event that damaged the front and left side of the Vehicle and caused structural damage, and that the Vehicle is unsafe to drive and was not in merchantable condition. The expert further opined that any automotive professional performing a simple visual inspection would be able to clearly see that the Vehicle had been wrecked and improperly repaired.

37. Based upon the extent of the improper repairs and unrepaired damage, the Vehicle did not meet the criteria for certification under Honda's CPO program at the time of sale to Plaintiff.

38. A cursory inspection by anyone experienced in the automotive trade would have revealed the defects and refinishing on the Vehicle.

39. On August 17, 2017, Plaintiff returned the Vehicle to Westbrook Honda.

40. On August 18, 2017, Plaintiff, by her attorney, notified Westbrook Honda and Honda Financial that she had revoked her acceptance of the Vehicle.

41. The defendants have failed and refused to refund to Plaintiff her deposit or the amounts that she paid under the contract.

42. Honda Financial is subject to Plaintiff's claims and defenses against Westbrook Honda in accordance with the terms of the retail installment contract and pursuant to Conn. Gen. Stat. § 52-572g.

## V. CAUSES OF ACTION

### A. EQUAL CREDIT OPPORTUNITY ACT (WESTBROOK HONDA)

43. On account of her age, Westbrook Honda steered Plaintiff towards the Vehicle and told her that because she was only nineteen years old, she could not get financing for a new vehicle.

44. Westbrook Honda refused to accept a credit application from Plaintiff for a new vehicle and instead steered her to a used and less expensive vehicle and imposed less favorable terms than would have been available to someone not in her status.

45. Westbrook Honda violated 15 U.S.C. § 1691(a)(1) and 12 C.F.R. §1002.4(a).

46. Westbrook Honda and Honda Financial are liable to Plaintiff for actual damages, punitive damages up to $10,000, attorney's fees and costs.

### B. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (WESTBROOK HONDA & HONDA FINANCIAL)

47. This Count is asserted under Magnuson-Moss for Westbrook Honda's breach of the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314.

48. The Vehicle is a consumer product as that term is defined in § 2301(1) of the MMWA, 15 U.S.C. §§ 2301-2312.

49. A warranty that the Vehicle was in merchantable condition at the time of sale was implied by the contract by operation of Conn. Gen. Stat. § 42a-2-314.

50. The Vehicle, as sold to Plaintiff, was not in merchantable condition at the time of sale because it was unsafe to drive and it would not pass in trade under the description of a Certified Pre-Owned 2012 Honda Civic.

51. Westbrook Honda knew, or reasonably should have known, based on its expertise in the sale and certification of used Honda vehicles, that the Vehicle did not meet the standards for CPO status and that it was not in merchantable condition.

52. Westbrook Honda breached the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314.

53. Westbrook Honda's breach of the implied warranty of merchantability was tortious in nature, in bad faith, was wanton and malicious, outrageous, and was undertaken with bad motive and with a reckless indifference to the Plaintiff's interests and the injury that she sustained.

54. Plaintiff is entitled to an order that she validly and effectively revoked acceptance of the Vehicle.

55. As a result of the above-described actions, Westbrook Honda and Honda Financial are also liable to Plaintiff for her damages, including common law punitive damages, which together are expected to exceed $50,000.

56. Plaintiff also seeks attorney's fees and costs under MMWA.

C. BREACH OF EXPRESS WARRANTY (WESTBROOK HONDA & HONDA FINANCIAL)

57. Westbrook Honda made affirmations of fact or promise relating to the Vehicle that became part of the basis of the bargain and that created express warranties pursuant to Conn. Gen. Stat. § 42a-2-313(a).

58. Specifically, Westbrook Honda made affirmations of fact that the Vehicle had previously undergone the necessary inspections and reconditioning and that it met the requisite criteria to be designated as a CPO vehicle.

59. Westbrook Honda's representations that the Vehicle was a CPO vehicle constituted a description of the Vehicle that was part of the basis of the bargain, i.e., that the Vehicle satisfied the rigorous requirements for certification under Honda's CPO program, and this description became part of the basis of the bargain.

60. Either Westbrook Honda did not conduct the inspection required for certification, or it had so imperfectly conducted the inspection that it constituted a failure to inspect, or it knowingly certified a Vehicle that did not meet the requirements for certification.

61. Westbrook Honda has breached its express warranty as aforedescribed.

62. Westbrook Honda's breaches of express warranty were intentional, tortious in nature, in bad faith, was wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to Plaintiff's interests and the injury that she sustained.

63. Plaintiff is entitled to an order that she validly and effectively revoked acceptance of the Vehicle.

64. As a result of Westbrook Honda's breach of express warranty, it and Honda Financial are also liable to Plaintiff for damages, including common law punitive damages, and attorney's fees and costs.

D. CONNECTICUT UNFAIR TRADE PRACTICES ACT (WESTBROOK HONDA & HONDA FINANCIAL)

65. Through its above-described actions, Westbrook Honda also violated CUTPA.

66. Westbrook Honda violated CUTPA when it falsely and deceptively represented that the Vehicle met the Honda CPO criteria and that it had been inspected and found safe to drive.

67. Because the defects in the Vehicle were apparent to any automotive professional, Westbrook Honda's certification regarding the Honda CPO program was false, fraudulent, and issued in bad faith.

68. Westbrook Honda has engaged in unfair and deceptive acts in violation of CUTPA for which Plaintiff has suffered an ascertainable loss of money and property, including, but not limited to, the purchase of a Vehicle that was worth substantially less than the amount that it would be worth if the representations had been true.

69. For Westbrook Honda's CUTPA violations, Plaintiff is entitled to actual damages, attorney's fees and costs, and, in the discretion of the Court, punitive damages.

### E.  CONNECTICUT UNFAIR TRADE PRACTICES ACT (HONDA)

70. Honda is aware, due to past consumer complaints, that Honda dealerships frequently sell used Honda vehicles as CPO even though those vehicles do not meet the inspection criteria for certification.

71. Honda nevertheless continues to promote its certification program, causing consumers such as Plaintiff to believe that Honda CPO vehicles are of superior quality to other comparable vehicles and discouraging them from conducting independent inspections under the false belief that such inspections are not necessary because they have been conducted by Honda-trained technicians and determined to be of superior quality.

72. Honda's promotion of its CPO program is deceptive and unfair, and it causes harm to consumers such as the Plaintiff.

73. Plaintiff has suffered an ascertainable loss, because she has purchased a Vehicle that has a value that is substantially less than that for which she reasonably believed due to its inclusion in Honda's CPO program.

74. For Honda's violations of CUTPA, the Plaintiff is entitled to damages, attorney's fees and costs, and, in the discretion of the court, punitive damages.

Wherefore, Plaintiff claims actual damages, punitive damages up to $10,000 pursuant to the ECOA; punitive damages pursuant to CUTPA; common law punitive damages, and attorney's fees and costs, and an order that Plaintiff validly revoked acceptance of the Vehicle.

PLAINTIFF, ASHLEY BORZENSKI,

By: /s/ *Daniel S. Blinn*
   Daniel S. Blinn (ct02188)
   dblinn@consumerlawgroup.com
   Consumer Law Group, LLC
   35 Cold Spring Rd. Suite 512
   Rocky Hill, CT  06067
   Tel. (860) 571-0408
   Fax (860) 571-7457